Patterson, J.
The practical question in this case is, are any rights of the parties to this suit established to a fund now in the hands of the defendant Husson, as substituted assignee of Jacob D. Mills, under a general assignment made for the benefit of creditors in June, 1855? By the assignment, one William Dolsen was made assignee, and he entered upon the administration of the trust, and continued to act until July, 1865, when he died. On the 26th of March, 1868, the defendant Husson was appointed, by an order of this court, trustee and assignee, and in 1869 he received $3,503.67, the proceeds of an interest of the assignor in certain real estate, and in January, 1873, he also received, from the Chemical Bank $529.58, being a balance of moneys then standing to the credit of the account of Dolsen, assignee, with that bank. It is the aggregate of these two amounts to which the present controversy relates. William Dolsen left a last will and testament, *803 by which he appointed his daughter (the wife of the assignor) executrix, and letters testamentary were duly issued to her. She died in 1869, and the present plaintiff took out letters of administration de bonis non on the estate of his grandfather Dolsen. By Dolsen’s will the plaintiff, as the sole surviving child of Mrs. Mills, became entitled, on his mother’s death, to all his grandfather’s estate. In 1875 he claims to have received from Dolsen’s attorney an obligation of his father (the assignor) for $10,000, to which more particular reference will be made hereafter. In 1882 Jacob D. Mills (the father) assigned to the plaintiff all debts, dues, demands, causes of action, etc., he had against the defendant Hus-son, or, in other words, whatever interest he had by way of reversion in the assigned estate. By the assignment of Jacob D. Mills certain preferred creditors were provided for, and it is conceded that the moneys in Mr. Husson’s hands are insufficient to meet the claims of those preferred creditors. Jacob D. Mills was discharged from his debts by bankruptcy proceedings in 1868. Mr. John Todd was made assignee in bankruptcy, and on his death Mr. Scott, a defendant herein, was appointed to succeed him. The assignee in bankruptcy makes no claim to the fund, and has very properly refrained from asserting any right to the money, and it may be said at this point that in no aspect of the case can any question properly arise respecting the effect of the bankruptcy proceedings, as creating rights to the moneys in the assignee's hands. Whatever rights there are accrue by virtue of the assignment, and if Jacob D. Mills could claim anything under the act of 1875, to which reference will be made, it is not a right that would pass to his assignee in bankruptcy, because it was conferred by virtue of state legislation long after his discharge.
The parties to the action are the plaintiff, as administrator de bonis non ; Husson, as trustee of the assigned estate; the preferred creditors under the assignment or the personal representatives or next of kin of such of those creditors as are now deceased, and all persons who might by any possibility be interested in the distribution of the fund under the terms of the assignment or under the principles of law which have been invoked in the case. The plaintiff’s claim has a two-fold aspect, as above stated: First, virtually as a creditor, by his holding the ten thousand dollar obligation referred to, which obligation he claims is enforceable because, by the terms of the assignment, William Dolsen and Charles B. Hart were preferred for whatever amounts - were due them by the assignor; and, Secondly, he claims as assignee of the reversion, under the provisions of chap. 545 of the Laws of 1875, which amended the statute of uses and trusts, and which provided that § 67 of that statute should read as follows: “When the purpose for which an express trust shall have been created shall have ceased, the estate of the trustee shall also cease, and where an estate has been conveyed to trustees for the benefit of creditors, and no different limitation is contained in the instrument creating the trust, such trust shall be deemed,discharged at the end of twenty-five years from the creation of the same, and the estate conveyed to a trustee or trustees, and not granted or conveyed by *804 him or them, shall revert to the grantor or grantors, his or their heirs or devisees, or persons claiming under them to the same effect as though such trust had not been created.”
The defendant Husson in his answer controverts all the asserted rights of the plaintiff, and in addition sets up a counterclaim; but there is no proof which would justify a decree being made against the plaintiff on the alleged counterclaim, and, therefore, it does not require further consideration.
The defendant Husson has also interposed the defense of the statute of limitations, but, in the view I take of the case, it is unnecessary to pass upon that question. The receiver of the Bowery Bank makes no claim, but sets forth that he has fully accounted for and been discharged from his trust. The children of Coutant, a creditor, claim that they are entitled, as succeeding to their father’s interest as a preferred creditor, but it also appears -by their answer that an administrator had been appointed of their father’s estate and he has since died, and it does not appear that there is any person representing that estate who could call the defendant Husson to account, and although the children of Mr. Coutant have been made parties as next of kin, they have no such relation to the subject as would entitle them to’ relief upon the answer which they have interposed. Whatever rights Mr. Coutant, as a preferred creditor, may have had, if they have not been waived or lost by Blanchard, the administrator, must be asserted by some person to be appointed to represent his estate and who would be qualified to maintain an action against Husson as substituted assignee, for the latter is not obliged to account except to a duly appointed representative of Mr. Coutant’s estate.
We are thus brought to a consideration of the case as it stands between the plaintiff and the defendant Husson, and I am of the opinion that the plaintiff is not entitled to recover on either of the grounds upon which his claim is founded. Concerning the $10,000 instrument, while it is a sealed note, and in consequence of mention being made in the body of the instrument that it is signed and sealed by the parties who executed it, the twenty years statute of limitations would apply, yet I am satisfied that, in view of the relations of the parties to each other and of the vagueness and obscurity of the dealings between Jacob D. Mills and Dolsen, his father in law, it would be grossly inequitable to base a decree upon the simple possession by this plaintiff of this sealed note, which seems to have been handed to the plaintiff by Mr. Hart, who was at one time the attorney for Dolsen, and afterwards the attorney for Husson, as assignee. No claim has been made on this note until over thirty years after it became due. It is found in the possession of the attorney for Dolsen; that is, of Dolsen, assignee, and whether it was held as a personal asset of Mr. Dolsen, or came into his possession with the books and papers of his assignor, we have no means of determining ; but there is a striking significance, as affecting the validity of any claim upon this obligation, in the facts that there is no proof anywhere made that the assignor was indebted to his *805 father in law on this obligation, for the assignment merely prefers Mr. Dolsen for some unascertained and indefinite amount, and there is nothing stated in the inventory of Mr. Dolsen’s estate as to this obligation of $10,000. The absence of any account whatever of Dolsen, assignee, or of any statement of the administration of his trust, except as it is to be gathered from the account in the Chemical Bank, is also to be considered in this connection. Of the history of this obligation we know nothing, and, without further light respecting it, it is not to be assumed that it represents any enforceable debt whatever.
Concerning the second ground of the plaintiff’s claim to an account, I think it is untenable. Chapter 545 of the Laws of 1875, amending § 67 of the statute of Uses and Trusts, applies only- to real estate, as seems to be obvious from the very words of the statute itself. It is practically to relieve' titles of assignors, or their heirs and devisees, from the cloud or incumbrance of an assignment for the benefit of creditors where real estate has passed by an assignment and has not been respited to in execution of the trust. Reference is distinctly made to the estate conveyed and not granted by the trustee or trustees, and which is to revert to heirs or devisees; showing that all the legislature had in contemplation was to deal with the realty of an assignor for the benefit of creditors. There are cases in which the analogy of the Statute of Uses has been applied to trusts of personal property, but such adjudications are not in point in a case of this kind, where the assignee is in possession of a sum of money, the avails of real property which has been conveyed and disposed of, and which avails he holds under his trust for the benefit of those entitled to them.
But it is incontrovertible that the defendant Husson has no personal right to the fund in his possession, and he must undoubtedly account for and pay it over to whomsoever may be entitled to it under the terms of the assignment of Jacob D. Mills. The complaint in this action must be dismissed, with costs, and it will, of course, be without prejudice to the right of any authorized person in a properly constructed suit to demand an accounting and other appropriate relief.
F. A. Baker, for app’lt; D. McMahon, for resp’t.
Van Brunt, P. J.
We think that the opinion of the learned judge below correctly disposes of the questions involved upon this appeal.
It is apparent from an examination of this record that there was no evidence whatever of the delivery of the note in question. It might just as well have come into the hands of the plaintiff in the manner described by him, if the same had been found amongst the assignor’s papers, and which passed to the assignee; and in view of the long period of time which has elapsed since the making of the note and the presentation of the claim by the holder thereof, this would seem to be the only conclusion which could be arrived at. "
Objection is taken to the exclusion of the testimony of Mr. Jacob D. Mills, one of the makers of the note in question. Upon *806 what theory any testimony pertinent to the issue which could be given by Jacob D. Mills should be excluded, we are unable to imagine.
It is urged that it was objectionable under § 829 of the Code. But we fail to find any provision in that section which prevents the maker of a piece of commercial paper, when a claim thereon is presented against his assigned estate, from testifying as to the circumstances out of which such paper has arisen. But no such questions were asked the witness, and from subsequent events such a line of examination seems to have been studiously and purposely avoided.
But he was asked whether he had paid any portion of the obligation which was the subject matter of the controversy, and this was excluded, there never having been any evidence of a delivery of this piece of paper, although the ability to prove such delivery was within the reach of the plaintiff if he had chosen to avail himself of it. The question as to whether anything had been paid upon an obligation, in respect to which there had been no proof of delivery, was entirely immaterial, and it was not error to exclude it.
After the decision of this case the parties found that they had made a mistake. They had been speculating upon a given result in the action, but were disappointed at the conclusion at which the court arrived, and they made a motion for a re-hearing for 'the purpose of introducing other evidence which they had purposely failed to introduce because, perhaps, fearful in respect to what its result might be. And thus having speculated upon what the decision of the court would be, and having failed, they then made an application for a re-hearing to introduce this evidence of which they were possessed all the time, and have another opportunity to speculate as to what should be done with another question which that evidence would introduce.
The court declined to allow such rehearing and to permit the plaintiff to thus speculate upon, the result of the decision, and clearly properly so. The evidence was not newly discovered evidence. It was, apparently, purposely suppressed because it was thought not to be necessary and it was the best and safest course not to introduce it.
It is clear that under such circumstances no relief of the kind asked for could possibly be granted.
The judgment should be affirmed, with costs, and the order should also be affirmed, with ten dollars costs.
OBrieh, J., concurs.